UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MECEO RAY MCEADDY,<br>a/k/a, "Ray Annes,"<br><br>Defendant. | SEALED INDICTMENT<br><br>25 Cr.<br><br>**25 CRIM 246** |

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### Overview

1. Between at least approximately September 2018 and at least approximately February 2024, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, orchestrated and engaged in a conspiracy to steal more than $1 million in payments for purported music performances and tickets to sporting events from victims in, among other locations, Florida, Pennsylvania, and Nevada. MCEADDY made false representations to induce victims into signing contracts and sending money to bank accounts that MCEADDY controlled. These false representations included falsely purporting to be a marketing director and agent of a prominent media company based in Manhattan, New York ("Media Company-1"), in correspondence with victims and on social media. In making these false representations, MCEADDY worked with another individual ("CC-1") who helped draft fraudulent documents, including paystubs falsely reflecting that MCEADDY worked for certain media and entertainment companies, which MCEADDY sent to victims.

2. The fraudulent contracts that MECEO RAY MCEADDY, a/k/a "Ray Annes," the

defendant, induced the victims into signing promised the victims that MCEADDY could book both high-profile venues and famous musical artists to appear and perform at the victims' events. In exchange for the purported access to these musical artists and venues that MCEADDY promised to provide, from in or about September 2018 through in or about February 2024, the victims wired MCEADDY a total of approximately $1 million. After the victims made at least one downpayment on the contract, MCEADDY accepted the payment but deliberately failed to perform his obligations under the contract. When the victims followed up with MCEADDY to demand performance or reimbursement, MCEADDY occasionally made excuses, but in each instance, MCEADDY stopped communicating with the victims and did not pay back the full downpayment.

### The 2018 Miami Rap Concert Fraud

3. In or about 2018, after being referred to MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, by a colleague, an employee of a food production company (which together with its registered trademark are referred to herein as "Victim-1") contacted MCEADDY. MCEADDY represented that he could assist Victim-1 in booking two celebrity hip-hop musical artists ("Musical Artist-1" and "Musical Artist-2") to perform at an event at a nightclub in Miami, Florida scheduled for on or about September 21, 2018 (the "September 2018 Event").

4. On or about August 28, 2018, an authorized representative of Victim-1 signed an artist engagement contract ("Agreement-1") under which Victim-1 agreed to pay approximately $70,000 to a company operated by MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, to book Musical Artist-1 and Musical Artist-2 for the September 2018 Event. Agreement-1 provided that the event would take place on "Friday September 21st, 2018 & Saturday September 22nd, 2018," that the "Time of Performance" would be "1AM till 3AM," and that "[Musical Artist-1] & [Musical Artist-2] [would] HOST EVENT." According to Agreement-1, the full dollar value

of the deal was "$140,000 **ALL INCLUSIVE**."

5. On or about August 30, 2018, based on the representations of MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, Victim-1 wired approximately $35,000 as a downpayment to a bank account controlled by MCEADDY ("Bank Account-1").

6. As the date of the September 2018 Event approached, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, and an authorized representative of Victim-1 exchanged multiple emails in an apparent effort to work out the final details of the September 2018 Event, including negotiating the price of the transaction down to "$75,000 **ALL INCLUSIVE**." Despite these discussions, the September 2018 Event did not occur on the scheduled date.

7. On or about October 10, 2018, Victim-1's CEO sent MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, an email demanding that MCEADDY return the "$30,000 contractual downpayment, . . . understanding that [MCEADDY] will be keeping $5000 as a downpayment on a future event which has a date – TBD and that those funds will be applied to the future contract once it is established." In response to this email, MCEADDY falsely represented, in substance and in part, that MCEADDY would take steps to fulfill Victim-1's request.

8. On or about October 23, 2018, Victim-1's CEO called MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, and asked MCEADDY to return the $35,000 downpayment. After a few initial responses via email offering various excuses for the delay in sending the refund, MCEADDY eventually stopped responding to Victim-1 and, to date, has never returned the $35,000 downpayment.

**The 2020 Livestream Concert Fraud**

9. In or about October 2020, a content producer ("Victim-2") connected with MECEO

RAY MCEADDY, a/k/a "Ray Annes," the defendant, first via social media and then by email in MCEADDY's purported capacity as an employee of Media Company-1. During their correspondence, MCEADDY suggested that Victim-2 help produce a live streaming concert event for a Puerto Rican musical artist ("Musical Artist-3") that would take place on October 31, 2020 (the "2020 Livestream Concert"). MCEADDY stated, in sum and substance, that Musical Artist-3's fee was approximately $600,000, that MCEADDY had raised half that amount, and that MCEADDY was looking for investors to raise the second half.

10. In or about October 2020, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, emailed letters of intent ("LOIs") to Victim-2, alongside purported engagement agreements between MCEADDY and musical artists. MCEADDY, Victim-2, and Musical Artist-3's record label ("Media Company-2") purportedly executed an agreement, which contained the purported signature of a representative of Media Company-2.

11. In or about October 2020, Victim-2 raised approximately $150,000 from investors who were promised by MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, in writing that they would have their initial investments returned by a certain date. On or about October 14, 2020, based on MCEADDY's representations, Victim-2 wired approximately $4,000 to Bank Account-1 through a mobile payment service as a downpayment for the 2020 Livestream Concert.

12. Between approximately late October 2020 and 2021, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, rescheduled the 2020 Livestream Concert more than four times, using the Covid-19 pandemic and Musical Artist-3's purported movie filming schedule as reasons for postponement. The 2020 Livestream Concert never took place, and MCEADDY has not reimbursed Victim-2 or any of the other investors. In addition, contrary to his representation to Victim-2, MCEADDY had not in fact raised $300,000 towards the fee to book Musical Artist-3

for the 2020 Livestream Event.

13. On or about February 25, 2021, a representative of Media Company-2 wrote to Victim-2 and stated, in sum and substance, that Media Company-2 had never heard of MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, MCEADDY's company, or the 2020 Livestream Event.

### The 2021 New Jersey Nightclub Fraud

14. In or about February 2021, an employee of a media company ("Victim-3") entered into a contract with MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, for an event purportedly set to take place on or about March 5, 2021, at a nightclub in New Jersey (the "2021 NJ Nightclub Event"). MCEADDY represented to Victim-3 that a famous reggaeton singer ("Musical Artist-4") was scheduled to perform at the 2021 NJ Nightclub Event. MCEADDY further represented that the cost to book Musical Artist-4 was $100,000. MCEADDY also indicated that investors would split 100% of the profits from door sales and 15-20% of profits from bar sales.

15. On or about February 23, 2021, based on the representations of MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, Victim-3 wired approximately $50,000 to Bank Account-1.

16. The 2021 NJ Nightclub Event never took place, and Musical Artist-4 was never scheduled to perform at the 2021 Nightclub Event. MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, never returned the money that Victim-3 paid.

### The 2022 NFT and Afterparty Fraud

17. In or about February 2022, two representatives of a virtual reality company ("Victim-4") entered into a contract with MECEO RAY MCEADDY, a/k/a "Ray Annes," the

defendant, to use the likeness of Musical Artist-3 for the creation of unique digital assets called non-fungible tokens ("NFTs") and to book Musical Artist-3 for a photoshoot (the "2022 Photoshoot").

18. MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, caused the agreement to be drafted between Victim-4, Musical Artist-3, and a company referred to as "Ray Annes of Goals Media LLC," which is a company controlled by MCEADDY. In addition, the agreement required Victim-4 to provide an approximately $75,000 cash advance and a 15% revenue share to the artist in exchange for several services, including Musical Artist-3's participation in a photoshoot, collaboration with a cannabis brand, and licensing of the likeness, brand, and influence of Musical Artist-3 for the NFT project. The agreement also specified that Musical Artist-3 would receive a custom pair of trophy sneakers valued at approximately $100,000. The agreement included what appeared to be Musical Artist-3's signature.

19. On or about January 19, 2022, based on the representations of MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, Victim-4 wired approximately $75,000 to Bank Account-1.

20. Musical Artist-3 never entered into the purported agreement, the 2022 Photoshoot never took place, and MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, never returned the money that Victim-4 paid.

21. In or about 2022, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, approached an employee of Victim-4 ("Victim-5") with another purported business opportunity. MCEADDY proposed that Victim-5 host an afterparty with Musical Artist-3 for a sporting event in Miami, Florida on or about April 2, 2022 (the "April 2022 Afterparty"). To finalize the deal, MCEADDY drafted a fraudulent investment agreement for the event between "Goals Media 22

LLC," a purported company controlled by MCEADDY and with the same business address as "Ray Annes of Goals Media LLC" described above, and Victim-5. Under that agreement, MCEADDY requested an investment of approximately $75,000 from Victim-5 to support the event and promised to return approximately 50% of the profits to Victim-5.

22. On or about February 10, 2022, based on the representations of MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, Victim-5 wired approximately $75,000 to Bank Account-1.

23. When the April 2022 Afterparty did not take place as scheduled on or about April 2, 2022, Victim-5 then flew to Miami to discuss with MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant. MCEADDY informed Victim-5 that the event would be pushed to May 2022. In or about May 2022, Victim-5 flew to Miami again, but the event still did not take place. From in or about May through in or about August 2022, Victim-5 asked MCEADDY via text message to return Victim-5's investment in the April 2022 Afterparty. MCEADDY never returned the approximately $75,000 downpayment from Victim-5.

**The 2024 Super Bowl Fraud**

24. Between on or about December 5, 2023, and on or about December 7, 2023, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, and CC-1 exchange multiple email communications during which MCEADDY requested, in substance and in part, that CC-1 prepare a fraudulent invoice reflecting the purported purchase of a group of tickets to the 2024 Super Bowl in Las Vegas, Nevada. Specifically, on or about December 5, 2023, MCEADDY emailed CC-1 to ask that CC-1 prepare an invoice reflecting the purchase of approximately 30 Super Bowl tickets in five different groups at a price of $9,000 per ticket for a total cost of $270,000. In addition, on or about December 7, 2023, MCEADDY asked, in sum and substance, that CC-1 amend the

7

invoice again to reflect that the ticket price was $11,000 per ticket for a total cost of $330,000. Neither MCEADDY nor any of his companies actually purchased this large group of Super Bowl tickets.

25. On or about January 11, 2024, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, emailed CC-1 a blank investor contract and requested that CC-1 amend the document to reflect the following deal terms: (1) "Investment into 24 Super Bowl Tickets," (2) "$132,000 - Guaranteed," (3) "Return in Investment of $40,000 Within Seven Business Days," and (4) "Total Value of $172,000."

26. On or about January 12, 2024, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, and the owner of a media company ("Victim-6") entered into an agreement to pay approximately $132,000 for the initial purchase of approximately 24 tickets to the 2024 Super Bowl. This agreement closely resembled the agreement that CC-1 prepared on or about January 11, 2024. In the agreement shared with Victim-6, MCEADDY represented that he had an agreement to sell to a law firm ("Law Firm-1") those 24 tickets for approximately $25,000 per ticket. MCEADDY agreed to share with Victim-6 the proceeds from the re-sale of those tickets.

27. On or about January 18, 2024, pursuant to the agreement and based on the representations of MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, Victim-6 wired approximately $132,000 into a second bank account controlled by MCEADDY ("Bank Account-2").

28. On or about March 5, 2024, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, returned $100,000 of Victim-6's investment, but the amount of money he returned was less than the amount specified in the agreement and less than Victim-6 invested.

29. On or about January 16, 2024, MECEO RAY MCEADDY, a/k/a "Ray Annes," the

defendant, and a representative of an insurance, investment, and consulting firm ("Victim-7") entered into an agreement to pay approximately $132,000 for the initial purchase of approximately 20 tickets to the 2024 Super Bowl. MCEADDY represented that he had an agreement to sell to a law firm ("Law Firm-2") those 20 tickets at a price of approximately $25,000 for 18 tickets and $15,000 for the remaining two tickets. MCEADDY agreed to share with Victim-7 the proceeds from the re-sale of those tickets.

30. MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, made several misrepresentations to Victim-7. On or about December 29, 2023, while MCEADDY was located in the vicinity of 125th Street and 7th Avenue in Manhattan, New York, MCEADDY sent an email to Victim-7 that purported to show that the 20 Super Bowl tickets had been purchased by an associate of MCEADDY's and were, therefore, available for re-sale. Victim-7 was not located in New York when MCEADDY sent this email. In addition, MCEADDY attached to the agreement with Victim-7 a letter purporting to be signed by a senior partner at Law Firm-2. The individual listed on the letter, however, has never been a senior partner at Law Firm-2.

### Statutory Allegations

31. From at least in or about September 2018 through at least in or about February 2024, in the Southern District of New York and elsewhere, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

32. It was a part and an object of the conspiracy that MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, MCEADDY agreed to make and to cause to be made false statements to victims—namely, Victims-1 through -7—to fraudulently obtain funds, and in connection therewith and in furtherance thereof, MCEADDY transmitted and caused to be transmitted interstate emails, telephone calls, wire transfers of funds, and other electronic communications to and from the Southern District of New York and elsewhere.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

33. The allegations contained in paragraphs 1 through 30 of this Indictment are repeated and realleged as if fully set forth herein.

34. From at least in or about December 2023 through at least in or about February 2024, in the Southern District of New York and elsewhere, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MCEADDY engaged in a scheme—namely the 2024 Super Bowl Fraud described above—to make and to cause to be made false statements to victims—namely, Victims-6 and -7—to fraudulently obtain funds,

and in connection therewith and in furtherance thereof, MCEADDY transmitted and caused to be transmitted interstate emails, telephone calls, wire transfers of funds, and other electronic communications.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

35. As a result of committing the offenses alleged in Counts One and Two of this Indictment, MECEO RAY MCEADDY, a/k/a "Ray Annes," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

>(Title 18, United States Code, Section 981;
>Title 21, United States Code, Section 853; and
>Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
JAY CLAYTON
United States Attorney